UNION NAT. BANK OF OSHKOSH v. GERMAN INS. CO. OF FREEPORT.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1896.)

No. 188.

1. FIRE INSURANCE—CONDITIONS OF POLICY.
 An insurance company may limit the amount of insurance which may be effected upon any property which it insures.

2. SAME.
 A provision limiting the amount of insurance which may be effected upon the property may be infringed by insurance on a part only of the property.

3. PAROL EVIDENCE—MERGER.
 Parol negotiations leading up to a written contract of insurance are merged in the contract, which cannot be controlled by parol evidence of the understanding of the parties.

4. INSURANCE AGENT—EFFECT OF REPRESENTATIONS.
 A representation by a fire insurance agent that the taking of a certain policy will not conflict with the carrying of other insurance is a representation, not of a fact, but of a conclusion of law, and is not binding on the insurer.

5. SAME—KNOWLEDGE OF AGENT.
 Where an agent's knowledge of outstanding overinsurance is acquired by virtue of his relation as attorney for the insured, and in a transaction with which the company was not connected, his knowledge is not the knowledge of the company, so as to effect an estoppel or a waiver.

In Error to the Circuit Court of the United States, for the Eastern District of Wisconsin.

The plaintiff in error, assignee of James Morrison, brought suit upon a policy of fire insurance issued by the defendant in error on the 6th day of May, 1889, insuring against loss or damage by fire, to the amount of $4,100, a certain dwelling house, granary, "farm products while contained in said granary or barn," and other property, all situated in Ransom county, in the then territory of Dakota. The policy provided "$5,000 other insurance concurrent herewith permitted," and contained the following provision: "The insured, under this policy, must obtain consent of this company for all additional insurance or policies, valid or invalid, made or taken before or after

---

[1] 11 C. C. A. cii.

the issue of this policy, on the property hereby insured, and for all changes, that may be made in such additional insurance, and have such consent indorsed on this policy; otherwise, the insured shall not recover in case of loss. And in case of any other policies, whether made prior or subsequent to the date of this policy, the insured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby bears to the whole amount of policies thereon; and in case of the insured holding any other policy in this or any other company on the property insured, subject to the conditions of average co-insurance, this policy shall be subject to average and co-insurance in like manner, at the option of this company. All fraud, misrepresentation, or concealment in procuring this insurance, and all fraud or attempt at fraud, or false claims, and all false representations or statements to this company or its adjusting agents, and any false swearing in the proofs or adjustment of a loss, shall cause a forfeiture of all claim on the insurer, and shall be a full bar to any recovery for loss under this policy. The use of general terms, or anything less than a distinct specific agreement, clearly expressed, and indorsed on this policy, and signed by a duly-authorized agent of this company, shall not be construed as a waiver of any printed condition or restriction herein; and no notice to, and no consent or agreement by any local agent shall affect any condition of this policy, until such consent or agreement is indorsed hereon in writing."

At the trial the plaintiff in error, under objection, tendered evidence going to prove that, in the fall previous, Morrison applied to one O'Rourke, the local agent of the defendant in error at Lisbon, Dak., for insurance on his farm property. O'Rourke at the time was also the agent of the Insurance Company of North America, and of the Phœnix Insurance Company of Hartford, and was also the attorney of Morrison. O'Rourke at that time issued to Morrison a policy in each of the three companies. The one in the Insurance Company of North America was for $4,500.00, and that in the Phœnix Insurance Company of Hartford was for $2,500.00; the latter covering only 5,000 bushels of wheat contained in the granary. Soon after, the defendant company canceled its policy, being unwilling to accept a risk on a threshing machine and separator, and returned to its agent, to be paid to Morrison, the premium which the company had received. Morrison at that time had left Dakota, and was in Wisconsin. Upon being notified of the cancellation, he directed O'Rourke to keep the premium returned for him until he should take out a new policy. Upon his return to Dakota, in the spring of 1889, the policy in suit was issued by O'Rourke on Morrison's renewed application on the 6th of May, 1889, covering the same property as the former policy, with the exception of the threshing machine and separator.

The following table declares the distribution of the total insurance upon the property covered thereby:

| Property Insured. | German Ins. Co. | Phœnix Ins. Co. | Ins. Co. of N. A. | Total Ins. |
|---|---|---|---|---|
| Dwelling house | $ 500 | $...... | $ 500 | $ 1,000 |
| Household furniture | 150 | ...... | 150 | 300 |
| Granary | 600 | ...... | 400 | 1,000 |
| Farm products in granary | 1,250 | 2,500 | 1,250 | 5,000 |
| Farm utensils | 400 | ...... | 400 | 800 |
| Mowers, harvesters, and binders | 500 | ...... | 500 | 1,000 |
| Threshing engine, and belts | 45) | ...... | 450 | 900 |
| Carriages, wagons, etc | 250 | ...... | 250 | 500 |
| Total concurrent insurance | $4,100 | $2,500 | $3,900 | $10,000 |
| Chicken coop | 100 | ...... | ...... | 100 |
| Two threshing machines | ...... | ...... | 400 | 400 |
| Windmill | ...... | ...... | 200 | 200 |

Total insurance....................................................... $11,200
Total concurrent with defendant's policy.......................... 6,400

It was also proven that the policy in the Phœnix Insurance Company was upon wheat contained in the granary, which Morrison did not then wish to dispose of, and was for a period of six months. Morrison testified at the trial that O'Rourke told him in the fall of 1888, and at or before the time of issuing the three policies, that the other two policies had nothing whatever to do with the policy in the Phœnix Company, and would not interfere with it. The fire occurred 16 days after the date of the defendant's policy, and 4 days before the expiration of the Phœnix policy. The defendant company was not informed of any other insurance in excess of $5,000, nor was such additional insurance indorsed upon the policy. At the time of the fire there were some 3,500 bushels of wheat in the granary, for which, with other loss, a recovery is here sought of the defendant in error for its proportionate share of the loss. There was evidence at the trial tending to prove certain other defenses with respect to incumbrances upon the property, which need not be considered, in view of the ground upon which the judgment of the court proceeds. At the conclusion of the evidence, the court below directed the jury to return a verdict for the defendant, to review which judgment this writ of error is prosecuted.

Chas. Barber, for plaintiff in error.

Hume & Bareuther, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after statement of the facts, delivered the opinion of the court.

The total amount of insurance upon the property covered by the policy in suit, omitting the item of $100 upon the chicken coop, was $10,500, being an amount of $6,400 of insurance above the amount of the policy in suit. The amount of the insurance covering the farm products in granary was $5,000. The contract between the parties only permitted $5,000 other concurrent insurance on the property insured. It is clear, therefore, that, if the parties are bound by this contract, there was insurance beyond the amount permitted. We put no faith in the contention that the wheat in the granary does not come within the definition of "farm products," as that term is employed in the policy. We think it idle to assert that wheat is not a farm product. The proposition, in our judgment, does not merit argument to rebut it.

It cannot be doubted that an insurance company may limit the amount of insurance which may be effected upon any property which it insures. It is essential to safety that it should be permitted so to contract; otherwise, the moral risk of over-insurance would be great, and the hazard assumed by the company increased beyond that which it had assumed. The limitation of the amount of concurrent insurance was therefore material to the risk; and, since the amount of concurrent insurance was in excess of the limitation, there can be no recovery if that provision has not been waived. Carpenter v. Insurance Co., 16 Pet. 495; Bard v. Insurance Co., 153 Pa. St. 257, 25 Atl. 1124; Allen v. Insurance Co., 123 N. Y. 6, 25 N. E. 309; Baumgartel v. Insurance Co., 136 N. Y. 547, 32 N. E. 990. Such a contract is also infringed by other insurance on a part only of the property insured. Pitney v. Insurance Co., 65 N. Y. 6; Billington v. Insurance Co., 39 U. C. Q. B. 433; Shannon v. Insurance Co., 2 Ont. App. 396.

It is insisted that this provision of the contract has been waived because of the fact that O'Rourke, the agent, knew, when this policy was issued, of the other insurance upon the property in excess of the stipulated amount. It is not urged that the defendant company knew of the fact, but that the knowledge of the agent is to be imputed to the defendant. It is said that, in the autumn prior to the issuance of this policy, the agent stated to Mr. Morrison that the taking of the policy in the Phœnix of $2,500 upon the wheat in the granary would not conflict with his carrying $2,500 other insurance on the farm products contained in the granary. There are several reasons why this contention cannot avail:

1. This conversation was prior to the issuance of this policy. We need not now consider whether the issuance of the policy in question was a part of and a mere continuation of the original transaction in November, 1888, or was an independent and a different transaction. In either case the conclusion must be the same. We think it established and elementary law that parol negotiations leading up to a written contract are merged in the contract, and are not to be controlled or affected by parol evidence of the understanding of the parties. Specht v. Howard, 16 Wall. 564; Forsythe v. Kimball, 91 U. S. 291; Brown v. Spofford, 95 U. S. 474; Mowry v. Insurance Co., 96 U. S. 544; Bast v. Bank, 101 U. S. 93; Martin v. Cole, 104 U. S. 30; Thompson v. Insurance Co., Id. 252; Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213; Burnes v. Scott, 117 U. S. 582, 585, 6 Sup. Ct. 865; Falk v. Moebs, 127 U. S. 607, 8 Sup. Ct. 1319; De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536; Seitz v. Machine Co., 141 U. S. 518, 12 Sup. Ct. 46; Union Stock-Yards & Transit Co. v. Western Land & Cattle Co., 18 U. S. App. 438, 453, 7 C. C. A. 660, and 59 Fed. 49; Gorrell v. Insurance Co., 24 U. S. App. ——, 11 C. C. A. 240, 246, and 63 Fed. 371.

2. The alleged representation of O'Rourke was not the representation of a fact, but of a conclusion of law, and therefore not binding upon the insurer. Clodfelter v. Hulett, 72 Ind. 137; Association v. Kryder, 5 Ind. App. 430, 31 N. E. 851.

3. The agent O'Rourke had acquired the knowledge of the outstanding over-insurance, by virtue of his relation as attorney for Morrison, and in a transaction with which the company was not connected. His knowledge therefore was not the knowledge of the company, nor is it estopped thereby, nor can a waiver be predicated thereon. Trentor v. Pothen, 46 Minn. 298, 49 N. W. 129; Insurance Co. v. Parsons, 47 Minn. 352, 50 N. W. 240.

We are of opinion that the judgment of the court below was correct, and should be affirmed.